There being evidence tending to show that the plaintiff was injured while riding as a passenger in a taxicab of the defendant cab company, a common carrier of passengers, which cab was being operated at the time by a driver of the defendant, and that the plaintiff's injury was caused by the negligence of the driver in the operation of the taxicab, the verdict against the defendant awarding damages to the plaintiff was authorized by the evidence and was not contrary to law.
 DECIDED JULY 3, 1941.
Macie Howard brought suit in the superior court of Muscogee County against the Co-op Cab Company, "a common carrier of passengers for hire," in which she sought to recover damages for personal injuries sustained by her while she was riding as a "passenger for hire" in a taxicab of the defendant. She alleged in the petition that such cab was being operated at the time by an agent and servant of the defendant, and that by reason of the negligent operation of the taxicab by the defendant's servant the cab was driven into a "gully and ditch" off the road, causing the plaintiff to be injured. The defendant denied liability.
The case proceeded to trial before a jury. The following facts appeared from the evidence: Macie Howard testified in part as *Page 253 
follows: "On or about December 27, 1938, I employed a taxicab to bring me from Cotton's Fish Camp to Columbus. I didn't know the boy that was driving the cab. . . The cab bore a sign on it, it was Co-op Cab Company. . . I asked him could I hire him to bring me to town [Columbus]. He said he could. I paid him $2 there. I got in the cab. . . We left and he started driving pretty fast, and Albert asked him to slow down. . . The road is narrow and has curves in it. Some parts are wide. . . Albert told him to slow down, and, when we got out of Cotton's Fish Camp Road into Summerville Road, he was going so fast he couldn't make the turn. . . He ran out of the road into a ditch. . . It inflicted injuries on me. . . I saw that taxicab man. . . I asked him if I could hire the cab to come to town. One of the boys said, `Yes, go and get in the back of the car and we will be there in a few minutes.' I paid him $2 then. I came out to the car, and I asked him what he charged, and he said $2, and I gave him the $2. One of the boys and a girl got in the car and we started to town. I do not know who was driving the cab." J. O. Locke, president of the cab company testified in part as follows: "At the time Miss Howard alleges she was injured Frank Newberry was not supposed to have been driving the cab. He was off duty. He was not employed by the Co-op Cab Company at that time. We operate on a twelve-hour basis. I do not know the number of the cab Miss Howard was riding in at the time of her alleged injuries. I do not know who was in charge of that cab on that particular night. Millard Heathcock was in charge. My instructions, in so far as the operation of that cab is concerned, are that they are not supposed to go out of the city limits of Phenix City or Girard or Columbus. They have no authority to drive that cab beyond the police jurisdiction of the two cities. They have no authority to allow others to drive. They have no authority to turn their cabs over to any one else to drive. I have given them such instructions. . . Mr. Newberry was not an employee of the company . . at the time. He had been employed before and has been employed since, but was not employed at that time. . . Millard Heathcock worked that night. The last time Frank Newberry worked was about two nights before. He had not worked up until that time. We change drivers, but they work on a twelve-hour shift. . . I don't know what cab was up there. I don't *Page 254 
remember the different numbers of them. These drivers do not deliver people all over town and outside the city limits. The law of Alabama requires that we can not go outside the city limits. They do not go outside with my permission."
Millard Vernon Heathcock testified in part as follows: "On December 26, the night on which Macie Howard claims she was injured, I was employed by the Co-op Cab Company to carry passengers to and from their destinations. I was on duty that night about twelve o'clock. I went on duty about five o'clock in the afternoon, but after midnight I just [voluntarily] went out to Cotton's Fish Camp. I did not have the cab in service along about twelve o'clock that night. It wasn't in service when I went out to the fish camp, because I didn't have a pay passenger to go out there. I took the cab out of service around midnight after business fell off. Frank Newberry and myself and this Whittle girl went out to Cotton's Fish Camp for supper. We were in a place eating, and some one knocked on the door. I got up and went to the door and Macie, Miss Howard, came from the rear of the taxicab, . . and asked me would I bring them to town. I told them I had not finished eating supper; if they would wait, I would be glad to bring them; but they were in a hurry and Mr. Newberry brought them back to town. . . My duty as a cab driver, in so far as driving that cab within certain limits is concerned, is to pick people up and to carry them to and from their destination. The territory I am authorized to cover is Phenix City and Columbus. I do not have any authority to go outside the police jurisdiction of Phenix City, but most of them go out there. I have been told to stay within the police jurisdiction. I have been told not to turn my cab over to third parties or other drivers or anybody. When you go on a cab you are supposed to be in charge of it until the other driver takes over. I was in charge that night. A lot of drivers that drive at night go and get the day driver and give him enough money to gas up and pay for it that evening. Ross White was to take over that cab. I gave it to him at the filling-station. After I took that cab out of service that night about twelve o'clock, it went back into service when they came and got me and brought me back from the fish camp. I put it in service myself. I authorized Frank Newberry to drive that cab. I don't suppose I had any authority to turn that cab over to a third party. Frank Newberry is a cab *Page 255 
driver and has a permit to drive a cab. . . We did have a practice of driving them over that way. I followed that practice, but he wasn't the driver of that car. He was a Co-op Cab driver. . . He was employed at that time. He wasn't working. I got the money. I paid the cab company $2.50. They charge $2.50 a day for the use of the cab. They don't get the profit. You work for what you make. That is the way we run it. You pay them $2.50 a day. . . I had the cab leased that day. I paid the $2.50 for the use of it. I went out to the fish camp and took Miss Howard as a passenger, and she was received as such. They paid me to bring them to town. . . The cab was No. 22. We all take passengers outside the city limits and receive them outside the city limits. We get twenty cents a mile, or we did when I drove there, when we went outside the city limits. That fare, I understand, is set in police headquarters. That is, twenty cents a mile outside the city limits. I respected that. I charged that. I carried people outside the city limits. I go outside the city limits to get them. . . We are not supposed to go anywhere we want to, but we do it. They never sent me beyond Cotton's Fish Camp. . . I have carried parties to Cotton's Fish Camp. I don't imagine Mr. Locke and them knew I took parties up there. I supposed they knew the cabs had been to Cotton's Fish Camp."
Frank Newberry testified in part as follows: "I was driving the taxicab which Macie Howard was in on the night she claims she was injured. On the night it happened I was off. . . Miss Howard here and her brother come to the door and asked who was driving the cab. Millard told them he was. They wanted to come to town. Millard told them to wait a few minutes until we got through eating supper, and they wanted to come then. He told me to take his cab and carry them to town. . . I wasn't on duty for the Co-op Cab Company that night. . . I am now working for the Co-op Cab Company. At the time of the accident I was working for the Co-op Cab Company. We do not drive first one cab and then another. . . We have a certain cab to drive; have to drive our own cab. . . I was a driver on the day of this accident. I wasn't working at that time. I had been employed, but I was not working that night. I was not subject to call at that time. I could not go on duty at any time I wanted to. . . I could not go on that night. I could go on the next night. I paid *Page 256 
$2.50 for the use of the cab for twelve hours. I can not go wherever I want to. I have to stay within certain bounds. We are supposed to haul anybody that has the money." Miss Whittle testified in part as follows: "Miss Howard and her brother came in and wanted to know who was driving the cab, and Millard spoke up and said we were. There were two, you see, Frank Newberry and Millard Heathcock, and Millard spoke up. She said, `Which one has the cab out there?' and Millard spoke up and said, `I have.' Miss Howard said, `Can you take us to town?' He says, `Wait until we finish our supper.' She said, `No,' she had to go home. Millard spoke up and said, `Frank, you are finished. How about you driving to town?' Frank said, `O. K.' He said, `Come on Pee-Wee' (that's what he called me), `are you ready?' I said, `Yes.' We started into town, and we were going about twenty or twenty-five miles an hour, and we turned to the left coming back to town, and the car slid over into the sand bed. . . I had a date with Frank that night. So far as I know I don't think he was on duty at that time. I didn't ask him. He didn't have a cab. We were in Millard's cab. . . Frank and Millard and his girl came by and got me. I was at home, 430 Fifth Avenue, at that time. That is Mrs. Young's place. That is a lewd house if you want to call it that. We receive men visitors there at night and take money from them. This was a pleasure date I was on that night. They came by where I was and got me, and then we all went up there to the fishing camp. I had a couple of toddies, that is, a couple of drinks. . . I didn't see a bottle sitting on the table. I didn't get any of that whisky. I wanted some, but we didn't get any before we left. We didn't have any at Cotton's Fish Camp. They said we could get some when we got back to town. They weren't drinking so far as I know. I had my couple of drinks before I left the house. Business wasn't very rushing at that time of the night. That is the reason I went on the party." Albert Howard testified in part as follows: "This Co-op cab came in, and we went out to get it to bring us to town and paid $2 to come to town. That $2 was paid to Heathcock. He didn't drive the car, he told us, says, `This boy is a cab driver and has a permit and everything, and he will carry you to town.'"
There was evidence from which the jury could find that the plaintiff was injured. There was evidence tending to show the extent *Page 257 
of the injuries. There was also evidence from which the jury could find that the injuries were received as the result of the operation of the taxicab, and there was also evidence from which the jury might find that such injuries had been received by the plaintiff as the result of a fight in which she participated shortly before she got into the taxicab to go to Columbus. There was evidence from which the jury were authorized to find that the driver of the cab operated it at an excessive speed and in a negligent manner and that as the result thereof the plaintiff was injured.
The jury returned a verdict for the plaintiff. The defendant moved for a new trial on the general grounds only. The case was tried before Hon. C. F. McLaughlin who was at the time judge of the trial court. After the trial Judge McLaughlin died and Hon. George C. Palmer was appointed to succeed him. It appears that Judge Palmer was disqualified to pass on the motion for new trial, and on agreement of counsel in the case and under the laws of Georgia, including the act creating the city court of Columbus, Hon. Thomas L. Bowden, judge of the city court of Columbus, assumed jurisdiction of the case for the purpose of passing on the motion for new trial. The motion was overruled and the defendant excepted.
There is no question raised by the defendant relative to the evidence being insufficient to authorize the jury to find that the plaintiff was injured and that such injuries were the result of negligent operation of the taxicab by the driver thereof. The sole question presented is whether the evidenced authorized the finding that the taxicab was being operated, at the time the plaintiff was injured, by an agent and servant of the taxicab company acting within the scope of his authority. The defendant insists that the fact that the cab in which the plaintiff was riding at the time of her injury bore the words "Co-op Cab Company" would at most only raise a presumption that the cab was owned by the defendant, and was not sufficient to raise a presumption that the driver of the cab had authority to drive it at the time and place, or that such driver was at the time operating the cab as the agent and servant of the defendant. The plaintiff's case does not depend entirely on the fact that she was *Page 258 
riding in a taxicab on which appeared the insignia "Co-op Cab Company." It appeared from the evidence that the cab was in charge of a servant of the cab company; that the plaintiff told the driver that she wished to hire him to bring her to Columbus in the cab; that the cab driver told her he could do so; that the plaintiff paid the required cab fare to this driver who accepted it; that the plaintiff did not know the cab driver; that she was at Cotton's Fish Camp near Columbus and desired to go to Columbus; that she saw the taxicab with the name "Co-op Cab Company" on it; that the cab was at the fish camp and the plaintiff went to the cabin where the cab was, knocked on the door and asked if she could hire the cab to get to town; that she was told that she could and to get in the cab, and that "We will be there in a few minutes;" that she got in the cab and the cab driver undertook to bring her to Columbus. It appeared from the evidence that cab drivers paid the cab company $2.50 a day for the use of the taxicabs; that a cab driver by the name of Heathcock was in charge of the cab hired by the plaintiff when the plaintiff hired it; that when the plaintiff hired the cab she was informed by Heathcock that he could not immediately take her to Columbus; that the plaintiff expressed a desire to get to Columbus at once; that Heathcock authorized Newberry, likewise a cab driver with a permit to drive a cab, in the employ of the cab company, but who was off duty at that particular time, to drive the cab, and that it was Newberry who was driving the cab when the plaintiff was injured. Heathcock testified that he got the money and paid the cab company $2.50 for the cab.
The evidence authorized the jury to find that the cab in which the plaintiff was riding at the time she was injured belonged to the cab company, and was being operated as a taxicab of the company in transporting the plaintiff, a passenger for hire, at the time the plaintiff was injured.
While there was evidence that while the driver of the taxicab was not on duty, and that under the rules of the cab company he was not authorized to operate the taxicab at the time the plaintiff was injured, it appears that the company was a common carrier of passengers, and the driver of the taxicab in which the plaintiff was injured was a taxicab driver of the company, and the plaintiff hired the taxicab to carry her as a passenger to Columbus, and while she was being transported as a passenger she was injured as the result of the negligent operation of the taxicab. *Page 259 
It follows that the verdict in favor of the plaintiff and against the taxicab company for injuries received by her, a passenger, in the negligent operation of the taxicab, was not without evidence to support it and was not contrary to law. This is so whether the plaintiff is seeking to recover for a breach of the contract of carriage or to recover damages resulting from the failure of the carrier to exercise the required care and diligence in the operation of the taxicab.
The court did not err in overruling the motion for new trial of the defendant cab company.
Judgment affirmed. Sutton, J., concurs. Felton, J., concursin the judgment.